UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ALLEN,<br><br>        Plaintiff,<br><br>    v.<br><br>DR. LOPEZ, *et al*.,<br><br>        Defendants. | Case No. 1:18-cv-00808-NONE-EPG (PC)<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED AS TO DEFENDANTS LOPEZ, OGBUEHI, AND RELEVANTE AND DENIED AS TO DEFENDANTS PATEL, SAO, ULIT, AND SPAETH**<br><br>**(ECF No. 45)**<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

**I.    INTRODUCTION**

Kevin Allen ("Plaintiff"), a prisoner in the custody of the California Department of Corrections and Rehabilitation, is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This case proceeds on Plaintiff's complaint, filed June 13, 2018 (ECF No. 1), on claims against Defendants Dr. Lopez, Dr. Spaeth, Dr. Sao, Dr. Ulit, Dr. Patel, PA Ogbuehi, and PA Relevante for a violation of the Eighth Amendment based on deliberate indifference to serious medical needs.  (ECF No. 14).  Plaintiff alleges that Defendants were part of a committee at Kern Valley State Prison that denied him needed surgery.

On October 22, 2019, Defendants filed a motion for summary judgment arguing that the undisputed facts establish that they are not liable, and alternatively that they are entitled to

1

qualified immunity. (ECF No. 45). Plaintiff filed his opposition and a request for judicial notice on November 4, 2019. (ECF Nos. 46 & 47).[1] Defendants filed their reply on November 12, 2019. (ECF No. 49).

After review of all submission, the Court recommends granting summary judgment in favor of Defendants Lopez, Ogbuehi, and Relevante because the undisputed facts establish that they did not make the decision to deny Plaintiff's surgery. The Court recommends denying summary judgment as to Defendants Patel, Sao, Ulit, and Spaeth because, based on the evidence presented, a reasonable jury could find that they acted with deliberate indifference to Plaintiff's serious medical needs in denying Plaintiff's surgery.

## II. LEGAL STANDARDS

### a. Legal Standards for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party

---

[1] In Plaintiff's opposition, Plaintiff requests appointment of pro bono counsel. (ECF No. 46, at p. 14). The Court will not rule on this request until after Defendants' motion for summary judgment has been resolved.

2

moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255. Moreover, the Court must liberally construe Plaintiff's filings because he is a prisoner proceeding *pro se* in this action. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

**b. Legal Standards for Deliberate Indifference to Serious Medical Needs**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately

indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

III. **FACTS**

A. **Medical Records**

Based on the medical records submitted, the following facts are undisputed:

- On July 21, 2015, neurological surgeon Moris Senegor evaluated Plaintiff and recommended surgery. His findings and recommendation are set forth in detail, and include the following:

4

> Radiology: Available for review is an MRI scan of the lumbar spine dated 4/10/14 was reviewed with him.  This reveals a 4-level disc degeneration from L2-3 down to L5-S1.  These is severe lumbar stenosis at L3-4 and L4-5.  At L3-4, there is also right paracentral disc herniation using the lumbar stenosis and left side of the spinal canal.
>
> Impression: My impression of this patient is that he has premature lumbar stenosis given his age and his very thin body habitus.  The problem is at L3-4 and L4-5 and presently is unilaterally symptomatic, only on the right side.  This patent could benefit from a decompression procedure.
>
> Plan/Discussion: I reviewed the findings with the patient and recommended a right L3-4 and L4-5 lateral recess decompression along with a possible right L3-4 discectomy.

(ECF No. 46, at p. 55).

- On January 15, 2016, Plaintiff's Primary Care Provider at that time, Law San Fu, reported that Plaintiff "was seen by neurosurgeon dr. moris senegor … for spinal stenosis and recommend to do surgery."  Plaintiff's symptoms included "Numbess [sic] on both thigh, back pain, abnormal gait, right leg strength weaker than left, lumbar spine limited to 50% of normal extension."  Under the section titled Assessment/Plan, Dr. Fu noted: "severe lumbar stenosis.  rsf for urgent lateral recess decompression with possible right L3 L4 discetomy was submitted…."  (ECF No. 46, at p. 60).

- Plaintiff received another MRI on March 10, 2016.  Relevant findings include: "L3-4: Desiccation of the intervertebral disc is present with loss of height and a mild broad-based disc protrusion.  Hypertrophic degenerative changes of the facet joints and thickening of ligamentum flavum are seen.  These findings result in moderate central canal and mild bilateral neural foraminal narrowing;" and "L4-5: Desiccation of the intervertebral disc is present with loss of height and a mild broad-based disc protrusion.  Hypertrophic degenerative changes of the facet joints and thickening of ligamentum flavum are seen.  These findings result in moderate central canal and moderate bilateral neural foraminal

5

narrowing." In impression, the report states "Moderate central canal narrowing is seen at L3-4 and L4-5." (ECF No. 45-4, at p. 27).

- On June 20, 2016, Plaintiff saw Nurse Practitioner Manasrah. Notes indicate "report CLBP getting worse, morphine is helping but not taking all his pain away, no loss of bowel or bladder function. walked in clinic with severe limping. he stated he was suppose [sic] to go for back surgery but he was transferred here instead due to his legal case. reports he is becoming [sic] in more pain." Additionally, "he was approved per notes for neurosurgery but needed new MRI and he was transferred here prior to completion. will discuss this case with medical team in AM report for further recommendations due to improvements on new MRI." (ECF No. 45-4, at p. 26).

- On June 22, 2016, Nurse Practitioner Manasrah submitted a Physician Request for Services form, requesting approval for a Physical Medicine and Rehabilitation consult. The section titled Medical Necessity states: "38 y.o. AA male with CLBP had MRI in 2014, shows severe lumbar stenosis, was seen by Dr. Morris 7/21/15 who recommended surgery based on MRI results of exam. New MRI done 3/10/16, which shows improvement without severe stenosis." Additionally, Nurse Practitioner Manasrah states "needs to be seen by Dr. William for further recommendations [illegible] see if surgery still advisable based on new findings." (ECF No. 45-4, at p. 6).

- On September 29, 2016, Plaintiff had his Physical Medicine and Rehabilitation consult with non-party specialist Dr. G. Williams via telemedicine, to determine whether surgery was required. Dr. Williams did not recommend surgery at this time. He wrote a recommendation after that consultation, which states in relevant part:

> The patient notes that he has had back pain for approximately 5 years. He recalls being told by a spine surgeon that a 2-level decompression would be recommended for his severe spinal stenosis. Subsequently, the patient has had a repeat MRI on

> 03/10/2016 which has showed moderate central canal stenosis at L3 through L5 and moderate bilateral neural foraminal narrowing at L4 through S1. Severe spinal stenosis was not noted on the repeat MRI, and there was a question regarding referral to spine surgery.
>
> …
>
> In regards to surgery, guidance was provided that nonsurgical options are recommended as they have fewer risks compared to surgery. Specifically, the patient may be considered for a TENS Unit for myofascial pain relief of the back pain. The TENS Unit is currently a non-formulary durable medical equipment item as per California Department of Corrections and Rehabilitation (CDCR) Durable Medical Equipment policy.

(ECF No. 45-4, at pgs. 18-19)

- On October 13, 2016, Nurse Practitioner Manasrah submitted a Physician Request for Services form, requesting approval for a neurosurgery consult to assess whether surgery was still necessary based on the improvement shown in Plaintiff's new MRI, writing "had MRI 3/10/16 of lumbar spine prior to being sent to neurosurgery in the other prison but was transferred here, per P/I symptoms getting worse. Seen Dr. William 9/29/16 [illegible] severe lumbar stenosis. L2-S1 disc degeneration. he was approved for [illegible] neurosurgery but SVSP decided to do new MRI. New MRI 3/10/16 shows some improvement—but P/I symptoms [illegible], can not sit > 10 minutes, interferes in sleep and ADLs." (ECF No. 45-4, at p. 9).
- On October 28, 2016, Plaintiff had his neurosurgery consult with non-party specialist Dr. H. Segal via telemedicine. Dr. Segal "inform[ed] patient that he will be recommending surgery & he will be sending his recommendation to the CDCR/PCP & go from there." (ECF No. 45-4, at p. 8).
- Dr. Segal prepared a letter providing further detail of his evaluation. Dr. Segal summarized his plan as follows: "I am going to discuss this gentlemen's scans with one of my colleagues, Dr. Ramberg, and plan on a surgical procedure. The risks and expectations of surgery were discussed with the patient in detail today.

7

I am recommending microsurgical laminotomy at L4-5 on the right. The L3-4 protrusion seems to have resorbed on its own." (ECF No. 45-4, at pgs. 10-11).

- On November 9, 2016, Nurse Practitioner Manasrah wrote the following note: "discussed P/I with KVSP Doctors supervisor & PAs in regard to recent neurosurgery visit. Discussed P/I case in detail—the plan per the team to submit routine RFS for laminectomy so RFS was written. P/I was not seen." (ECF No. 45-4, at p. 21).

- On November 9, 2016, a Physician Request for Services form was sent, requesting Laminectomy L4-L5. The form states the neurosurgeon "recommended L4-L5 laminectomy based on symptoms & recent MRI results 3/10/16 per record he was approved for surgery. 7/[illegible]/15 but was never completed." It also noted that "pain radiate[s] to [illegible], has been on NSAID, activity modification, now on morphine x 12 [illegible] with continued symptoms, numbness worsen with walking, unable to sit for extend time[,] [decreased] strength." (ECF No. 45-4, at p. 13).

- On November 11, 2016, Plaintiff reported a fall. Medical notes following that fall state: "Hx of chronic back pain and herniated disc. Fall about 2 hours ago from feeling weak and back pain. Neg LOC. Pain lower back radiating to right foot denies any neck pain…. The patient presents with thoracic pain, lumbar pain and lower back injury. The onset was chronic. The course/duration of symptoms is constant." (ECF No. 46, at p. 28-30).

- On November 11, 2016, Plaintiff received a CT of his Lumbar Spine, without contrast. The report reviews relevant findings and contains the conclusion: "1. L3-4 chronic degenerative spondylosis anteriorly. 2. L5-S1 degenerative disc disease. 3. No acute vertebral injury is apparent radiographically." (ECF No. 45-4, at p. 14).

- On November 11, 2016, Plaintiff saw Defendant Physician Assistant Relevante, who noted "unable to stand up due to back pain + stiffness." (ECF No. 46, at p.

8

35).

- According to a Physician Request for Services form, dated November 14, 2016, "I/p fell in cell, states he can't sit up, states he has [] a disc herniation in lower back." (ECF No. 45-4, at p. 12).

- On November 16, 2016, Nurse Practitioner Manasrah saw Plaintiff, and wrote the following relevant notes: "hosp. report reviewed, CT scan consistent with MRI results from 3/2016, shows L3-L4 chr. deg. spondylosis L5-S1 deg. disk dz recommended pain management and f/u which have been done already[.]  please see previous note as he already seen by neurosurgery and RFS was written for back surgery." (ECF No. 45-4, at p. 24).

- The Physician Request for Services form requesting surgery contains a findings section under the request, which states: "Does not meet criteria for medical necessity based on MRI finding of no nerve compression.  If you disagree, present to MARC."  (ECF No. 45-4, at p. 13).

- Further down the page, in a section titled recommendations, the form states (in different handwriting): "MAR Committee 11/29/16.  Denied surgery at this time because new MRI shows improvement.  Will try conservative therapy and reevaluate in 6 months."  (Id.).

- On July 12, 2017, FNP Pallomina submitted another request for microsurgical laminotomy at L4-L5, per the neurosurgeon's recommendation.  Regarding medical necessity, FNP Pallomina wrote:

   38 year old African American Incarcerated male with chronic
   back pain related to fall from top bunk x 6-7 years ago.
   Complaining of severe excruciating lower back pain—current
   MRI of the Lumbar area done (3/10/2016) in Salinas valley state
   prison—showed diffuse degenerative changes of the lumbar
   spine; mild central canal narrowing present in L2-L3.  Moderate
   central canal narrowing in L3-L4 and L4-L5.  Moderate bilateral
   neural foraminal narrowing present L4-L5 and L5-S1.  Seen by
   Dr. Segel (Neurosurgeon) Oct. 28, 2016—recommended
   microsurgical laminotomy at L4-L5 on the Right.  Was
   previously seen by Dr. Ramburg while in Salinas Valley state

9

    prison which also recommended surgical procedure.  On evaluation inmate verbalizes tingling sensation with numbness on the Right Foot—uses cane for mobility and have been on chronic pain medication (MS Contin).  Have been sent multiple times with Physical therapy have not helped.

    (ECF No. 46, at p. 18).

- On July 25, 2017, the MAR Committee again rejected the request for surgery, stating "no new objective physical findings to support surgery.  Will do another physical therapy referral.  Taper off Morphine per MAR Committee."  (ECF No. 46, at p. 18).  The report of the MAR Committee from July 25, 2017, indicates that Lopez, Spaeth, Sao, Ulit, Patel, Ogbuehi, Relevante, Wallace and Pallomina were present. The report notes as follows:

    Case discussed with PAIN COMMITTE [sic] regarding inmate recommendations for Microsurgical laminotomy at L4-L5 per Neurosurgeon recommendations—DENIED related to does not meet medical necessity INTERQUAL Documented last MRI of the Lumbar spine/area done 3/2016 showed diffuse degenerative changes of the lumbar spine; mild narrowing present L2-L3; moderate central canal narrowing in L3-L4 and L4-L5.  Moderate bilateral neural foraminal narrowing present L4-L5 and L5-S1.  Previously seen by Dr. Seagal and initially by Dr. Ramburg while in Salinas valley state prison—both recommended surgical intervention.  Was maintained on conservative treatment MS ER 5 mg/BID and was on cane for mobility support.

    MARC Recommendations:
    1, Taper dose MS ER on the next visit consultation
    2. Continue Physical Therapy for further PT session for chronic back pain
    3. Alternative chronic pain meds such as duloxetine; oxcarbazepine; NSAIDS
    4. Topical capsaicin cream for localized pain control.

    (ECF No. 46, at p. 46).

- A progress note, which appears to be dated December 11, 2018, indicates "On today's consultation--inmate verbalizes excruciating pain with shooting pain from the lower back down to the right foot with tingling sensation.  He was walking with hesitation with the use of cane.  Furthermore, he was complaining of tingling sensation 'pins and needles' on both legs more on the right compared

to the left. He was unable to bend 45 [degrees] touching toes related to his subjective pain." (ECF No. 46, at p. 19). The assessment from this consultation was "We will consult follow-up with neurosurgeon to further evaluate for previously planned microsurgery laminotomy procedure. Referral for service for planned surgery was completed--pending approval." (Id. at p. 21).

### B. Declarations from Defendants

#### 1. Defendant S. Lopez

S. Lopez explains that what a MAR Committee is:

> Each California Prison has a MAR Committee. MAR Committees meet as often as necessary to approve or disapprove requests for medical services otherwise excluded by regulations; review and manage referrals for specialty medical services; review and manage institutional and community hospital bed usage; review other available utilization management data; and report requested utilization management data to the Headquarters Utilization Management committee. The MAR committee decides whether to grant or deny a requested surgery based on a majority vote.

(ECF No. 45-4, at ¶ 11).

Regarding the decision about Plaintiff's care, Defendant Lopez states:

> I do not vote on the MAR Committee and did not deny Plaintiff's surgery on November 29, 2016. I was also not at the prison on the day that the MAR Committee denied the request for surgery, I was in Elk Grove.

(Id. at ¶ 13).

Finally, S. Lopez states that based on his/her opinion, based on his/her education, training and experience as a Doctor of Osteopathic Medicine, and Chief Medical Executive at Kern Valley State Prison:

> the MAR committee made the correct decision. Plaintiff was showing improvement from nonsurgical care, making conservative therapy with a re-evaluation in six months the safer route given the significant risks associated with spinal surgery, which can leave a patient worse off. The MAR Committee's decision was within the standard of care.

(Id.).

11

### 2. Defendant O. Ogbuehi

Defendant O. Ogbuehi states that he/she worked as a Physician Assistant at Kern Valley State Prison (KVSP) in 2016. (ECF No. 45-5, at ¶ 2). Regarding his/her role in the decision, Defendant Ogbuehi states:

> I was responsible for presenting my patient's cases to the KVSP MAR Committee in 2016. However, I did not vote on the MAR Committee, and I did not deny Plaintiff Kevin Allen's (K-41879) surgery on November 29, 2016. Physician Assistants do not vote on the MAR Committee.

(Id. at ¶ 4).

### 3. Defendant J. Sao

Defendant J. Sao is an internal medicine doctor. (ECF No. 45-6, at ¶ 2). Regarding his/her role in denying the request for surgery, Defendant Sao states:

> On November 29, 2016, the Kern Valley State Prison (KVSP) MAR Committee denied FNP-C Manasrah's request for surgery based on the improvement in Plaintiff's MRI in favor of conservative therapy and reevaluation in six months. I am a voting member of the KVSP MAR Committee, and I voted to deny Plaintiff's surgery on November 29, 2016. While Plaintiff reported pain, spinal surgery is not clinically indicated for pain only. Spinal surgery carries great risk and can leave the patient with increased symptoms. And in Plaintiff's case, he was showing improvement from nonsurgical care. Under these circumstances, it was my medical opinion, based on my education, training, and experience, that conservative therapy with a re-evaluation in six months was the safer route, as risky surgery would not be necessary if Plaintiff's condition continued to improve with conservative care. The decision to deny surgery was within the standard of care.

(Id. at ¶ 6).

### 4. Defendant C. Relevante

Defendant C. Relevante is a Physician Assistant at Kern Valley State Prison. (ECF No. 45-7, at ¶ 2). Regarding his/her role in denying the request for surgery, Defendant Relevante states:

> I was responsible for presenting my patient's cases to the KVSP MAR Committee in 2016. However, I did not vote on the MAR Committee, and I did not deny Plaintiff Kevin Allen's (K-41879)'s surgery on November 29, 2016. Physician Assistants do not vote on the MAR Committee.

(Id. at ¶ 4).[2]

### 5. Defendant W. Ulit

Defendant W. Ulit is a Physician and Surgeon. (ECF No. 45-8, at ¶ 2). Regarding his/her role in denying the request for surgery, Defendant Ulit states:

> I am a voting member of the KVSP MAR Committee, and I voted to deny Plaintiff's surgery on November 29, 2016. While Plaintiff reported pain, spinal surgery is not clinically indicated for pain only. Spinal surgery carries great risk and can leave the patient with increased symptoms. And in Plaintiff's case, he was showing improvement from nonsurgical care. Under these circumstances, it was my medical opinion, based on my education, training, and experience, that conservative therapy with a re-evaluation in six months was the safer route, as risky surgery would not be necessary if Plaintiff's condition continued to improve with conservative care. The decision to deny surgery was within the standard of care.

(Id. at ¶ 6).

### 6. Defendant I. Patel

Defendant I. Patel is a Physician and Surgeon. (ECF No. 45-9, at ¶ 2). Regarding his/her role in denying the request for surgery, Defendant Patel states:

> I am a voting member of the KVSP MAR Committee, and I voted to deny Plaintiff's surgery on November 29, 2016. While Plaintiff reported pain, spinal surgery is not clinically indicated for pain only. Spinal surgery carries great risk and can leave the patient with increased symptoms. And in Plaintiff's case, he was showing improvement from nonsurgical care. Under these circumstances, it was my medical opinion, based on my education, training, and experience, that conservative therapy with a re-evaluation in six months was the safer route, as risky surgery would not be necessary if Plaintiff's condition continued to improve with conservative care. The decision to deny surgery was within the standard of care.

(Id. at ¶ 6).

### 7. Defendant M. Spaeth

Defendant M. Spaeth is a Medical Doctor. (ECF No. 45-10, at ¶ 2). Regarding his/her

---

[2] Although Defendant Relevante saw Plaintiff earlier that month, Defendant Relevante does not say what he/she presented to the MAR Committee regarding Plaintiff.

role in denying the request for surgery, Defendant Patel states:

> I am a member of the KVSP MAR Committee. However, I only vote on the MAR Committee when there is a tie, which rarely happens because there are usually an odd number of doctors on the MAR Committee. I do not recall whether I participated in the vote to deny Plaintiff's surgery on November 29, 2016, but in my opinion, based on my education, training, and experience, and a review of Plaintiff's medical records, the MAR committee made the correct decision. Plaintiff was showing improvement from nonsurgical care, making conservative therapy with a re-evaluation in six months the safer route given the significant risks associated with spinal surgery, which can leave the patient worse off. The decision to deny surgery was within the standard of care.

(Id. at ¶ 7).

### C. Plaintiff's Declarations

#### 8. D. Thomas

Plaintiff submitted the declaration of D. Thomas, who states that "On 11/11/2016, about 2:15 pm; I witness Mr. Allen K41879 fall to the ground after using the restroom, I ran to him and ask him was he alright[.] [H]e stated to me that he can't move at all and that's when I called man down and the officers came running to my cell…." (ECF No. 46, at p. 44, ¶ 2).

#### 9. Plaintiff

Plaintiff submitted his own declaration, largely reiterating his medical history set forth above. Plaintiff also declares "to this day Allen be [sic] in excruciating pain, it feels like its [sic] a million needles poking me in my lower back spine." (ECF No. 46, at p. 68, ¶ 6). Also, "Plaintiff [sic] medical records do not show improvement of the lower back spine at L4-5." (Id. at ¶ 7).[3]

### IV. ANALYSIS

Regarding Defendants Lopez, Ogbuehi, and Relevante, Defendants argue that summary judgment is appropriate because the undisputed facts establish they did not vote on the MAR Committee and did not deny the request for surgery. The Court agrees that these defendants

---

[3] Plaintiff also submits a letter from Mr. S. Alexander to D. Segal, complaining about Plaintiff being taken off his pain medication for no reason. This document is not a declaration under penalty of perjury and does not describe facts based on the author's personal knowledge. Accordingly, the Court has not considered it for purposes of this motion.

are entitled to summary judgment. It is undisputed that these defendants did not make the decision regarding the requested surgery. Therefore, these defendants cannot be liable for deliberate indifference to serious medical needs for denying that surgery.

Regarding Defendants Patel, Sao, Ulit, and Spaeth, Defendants argue:

> Plaintiff cannot meet either the objective or subjective component necessary to establish deliberate indifference against Defendant doctors Patel, Sao, Ulit, and Spaeth, because Plaintiff's recent MRI showed improvement and there were conflicting specialist recommendations regarding whether Plaintiff should still undergo surgery. (UF# 1-11, 18.) Furthermore, while Plaintiff reported pain, spinal surgery is not clinically indicated for pain only. (UF# 19.) Spinal surgery carries great risk and can leave the patient with increased symptoms. (UF# 20.) And in Plaintiff's case, he was showing improvement from nonsurgical care. (UF# 21.) Under these circumstances, it was the medical opinion of the MAR Committee that conservative therapy with a re-evaluation in six months was the safer route, as risky spinal surgery would not be necessary if Plaintiff's condition continued to improve with conservative care. (UF# 22-24, 27.) While Plaintiff may disagree with the MAR Committee's decision to continue conservative therapy and reevaluate for surgery in six months, his disagreement does not support a claim for deliberate indifference.

(ECF No. 45-2, at p. 6) (footnote omitted).

Upon review of the relevant facts, the Court recommends denying Defendants' motion for summary judgment as to Defendants Patel, Sao, Ulit, and Spaeth because based on the evidence presented reasonable jurors could return a verdict in Plaintiff's favor.

Regarding the objective component, Plaintiff has presented evidence that reasonable jurors could find that Plaintiff had a serious medical need, including Plaintiff's MRI showing degenerative disc disease, the opinions of two neurosurgeons recommending surgery, Plaintiff's own assertions supported by contemporaneous medical records that he suffered from pain and numbness, and Plaintiff's fall shortly before the decision due to severe back pain.

Regarding the subjective component, Plaintiff has presented evidence that reasonable jurors could find establishes that the voting members of the MAR committee knew of and disregarded an excessive risk to Plaintiff's health by denying him surgery, because they intentionally denied Plaintiff's request for surgery. Plaintiff has also presented evidence from which a fair-minded jury could concluded that the course of treatment that Defendants Patel,

Sao, Ulit, and Spaeth chose was medically unacceptable under the circumstances.

That evidence includes that two independent neurosurgeons independently recommended this surgery; and that Nurse Practitioner Manasrah requested the surgery after discussing it with "KVSP doctors supervisor" and "the team."

In evaluating the evidence, the jury may also look to the fact that Defendants Patel, Sao, Ulit, and Spaeth are not specialists in neurosurgery; whereas doctors Senegor and Segal, the doctors who recommended surgery, are specialists in neurosurgery. Doctors Senegor and Segal met with and observed Plaintiff, although at least Dr. Segal's consultation was via telemedicine. Defendants did not meet with or observe Plaintiff. Moreover, the reasoning of Doctors Senegor and Segal supporting surgery is lengthy and detailed, including a review of symptoms and specific MRI findings. In contrast, the reasoning provided by Defendants to deny surgery consists solely of the note: "Denied surgery at this time because new MRI shows improvement. Will try conservative therapy and reevaluate in 6 months." Even in opposition to summary judgment, Defendants' reasoning for their decision is sparse. Each of the relevant defendants' declarations state the same reasons using exactly the same words: "While Plaintiff reported pain, spinal surgery is not clinically indicated for pain only. Spinal surgery carries great risk and can leave the patient with increased symptoms. And in Plaintiff's case, he was showing improvement from nonsurgical care." There is no analysis of symptoms, of what risks were being considered, of the MRI, or of the benefits of other treatment.

Defendants argue that, despite this evidence, summary judgment is appropriate because the stated reasons for denying the surgery were adequate. However, it is undisputed that the area suggested for surgery, L4-L5, had not improved.[4] Moreover, the neurosurgeon, as well as the Nurse Practitioner and KVSP medical team, had access to this same information and

---

[4]. It is also worth noting that the "improvement" of the other area relied upon by the Committee was far from complete. According to the MRI dated March 10, 2016, the L3-4 that Defendants refer to as improved still showed degeneration. (ECF No. 45-4, at p. 27) ("L3-4: Desiccation of the intervertebral disc is present with loss of height and a mild broad-based disc protrusion. Hypertrophic degenerative changes of the facet joints and thickening of ligamentum flavum are seen. These findings result in moderate central canal and mild bilateral neural foraminal narrowing;" and "Moderate central canal narrowing is seen at L3-4 and L4-5."). Given the continued degeneration of even the L3-4, improvement in L3-4 does not necessarily mean that L4-5 will resolve without surgery.

nevertheless recommended surgery. Furthermore, Plaintiff has submitted evidence that he still suffers from severe symptoms, so whatever improvement was indicated elsewhere on the MRI has not alleviated his medical need.

Regarding the reason of "will try conservative therapy and reevaluate in 6 months," this too is subject to challenge given the opinions of the neurosurgeons and other medical professionals. Additionally, this reason is called into question by what actually took place after the denial of surgery. On July 12, 2017, almost seven months after the MAR committee denied the referral for surgery, FNP Pallomina submitted another request for the surgery, explaining "Seen by Dr. Segel (Neurosurgeon) Oct. 28, 2016—recommended microsurgical laminotomy at L4-L5 on the Right. Was previously seen by Dr. Ramburg while in Salinas Valley state prison which also recommended surgical procedure. On evaluation inmate verbalizes tingling sensation with numbness on the Right Foot—uses cane for mobility and have been on chronic pain medication (MS Contin). ***Have been sent multiple times with Physical therapy have not helped***." (ECF No. 46, at p. 18) (emphasis added). However, despite the fact that conservative therapy had not improved Plaintiff's medical condition, the MAR Committee, specifically including defendants Patel, Sao, Ulit, and Spaeth, again denied the surgery, stating "no new objective physical findings to support surgery. Will do another physical therapy referral. Taper off Morphine per MAR Committee." (ECF No. 46, at p. 18). A reasonable jury could find that Defendants' later denial of surgery despite a lack of improvement after 6 months indicates that their stated reason to deny surgery was a pretext rather than a good-faith medical assessment. Instead, drawing all inferences in Plaintiff's favor, the evidence suggests that even after conservative treatment failed, Defendants Patel, Sao, Ulit, and Spaeth still denied surgery, and indeed decided to discontinue pain medication as well.

In Defendants' reply, they argue that this information is not relevant because it came after the initial decision at issue here. The Court disagrees. In evaluating whether Defendants Patel, Sao, Ulit, or Spaeth acted with deliberate indifference in denying surgery on the basis of "will try conservative therapy and reevaluate in 6 months," it is relevant whether they reevaluated that decision after conservative therapy failed. Here, Plaintiff tried conservative

1  treatment, another medical professional then requested surgery, and these defendants again
2  denied the request for surgery.

3  The most salient fact that gives the Court pause in this recommendation is the fact that
4  another specialist, Dr. Williams, evaluated Plaintiff via telemedicine and did not recommend
5  surgery at that time. It is not clear from the record whether Dr. Williams' opinion was ever
6  provided to Defendants. Defendants' declarations in this case do not cite Dr. Williams' opinion
7  as a reason to deny Plaintiff surgery. Moreover, other specialists recommended surgery,
8  including after Dr. Williams formed his opinion. Additionally, Defendants did not even
9  provide Plaintiff the nonsurgical treatments recommended by Dr. Williams. (ECF No. 45-4, at
10 p. 19) ("In regards to surgery, guidance was provided that nonsurgical options are
11 recommended as they have fewer risks compared to surgery. *Specifically, the patient may be*
12 *considered for a TENS Unit for myofascial pain relief of the back pain.* Medication
13 management may *also* be considered. More risky than medications include procedural
14 considerations such as lumbar epidural steroid injections."). Nevertheless, a reasonable jury
15 could find that this evidence demonstrates that Plaintiff did not have a serious medical need for
16 surgery and Defendants' refusal to allow surgery was not deliberately indifferent.

17 The Court finds that although Dr. Williams' recommendation is evidence that supports
18 Defendants' position, it is far from undisputed evidence warranting summary judgment in
19 Defendants' favor.

20 Finally, as to Defendants' argument that Defendants Patel, Sao, Ulit, and Spaeth are
21 entitled to summary judgment on the issue of qualified immunity, the Court finds that, based on
22 the evidence presented, they are not.

23 "The doctrine of qualified immunity protects government officials 'from liability for
24 civil damages insofar as their conduct does not violate clearly established statutory or
25 constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan,
26 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In
27 determining whether a defendant is entitled to qualified immunity, the Court must decide (1)
28 whether the facts shown by Plaintiff make out a violation of a constitutional right; and (2)

whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232. To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The Court finds that the right in question here was clearly established prior to the incidents alleged in the complaint. It has long been established that, when deciding between alternative courses of treatment, a medical professional violates the Eighth Amendment if that professional, in conscious disregard of a serious medical need, chooses a course of treatment that is medically unacceptable under the circumstances. Jackson, 90 F.3d at 332. And, as discussed in detail above, Plaintiff has submitted evidence that, in conscious disregard to Plaintiff's serious medical need, Defendants Patel, Sao, Ulit, and Spaeth chose a course of treatment that was medically unacceptable under the circumstances. Thus, Defendants Patel, Sao, Ulit, and Spaeth are not entitled to summary judgment on the issue of qualified immunity.

## V. RECOMMENDATIONS

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. Defendants' motion for summary judgment (ECF No. 45) be GRANTED as to Defendants Lopez, Ogbuehi, and Relevante; and

2. Defendants' motion for summary judgment (ECF No. 45) be DENIED as to Defendants Patel, Sao, Ulit and Spaeth.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on

appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 8, 2020**                              /s/ Erica P. Grosjean
                                                     UNITED STATES MAGISTRATE JUDGE